Waties and Bay,
present, said it was the duty of the court to give as speedy relief to insolvent debtors applying for the benefit of this act, as the nature of the thing and the principles of the law itself would warrant. But there were cases which often called upon the justice of the court to be cautious and circumspect in the exercise of the powers given to tne judges by this act. In particular, they are to be satisfied that the person applying lor the benefit of the act is about acting the fair and honest part with his creditors ; and that he has not concealed, transferred, or conveyed away any part of his property, with a view of defrauding them out of any part of their just debts. In order to come at this saiisfaction, they observed, there were two modes of proceeding, which might be resorted to for that purpose. The first was, by examining into the case themselves, in a summary manner, without the intervention of a jury. The second was, by sending the case to the jury, to determine op matters of fraud, which were very proper for their consideration. T hat in common cases, where the facts and circumstances were easily come at and obtained,' the judges *149 would proceed agreeable to the first mode, and examine into the matters menas-- ives ; but in intricate and perplexed or complicated cases, they would send it to a jury to determine, on a suggestion to be filed for that purpose, in which they would allow the defendant the liberty of pleading, and defending himself, in like manner as on the mal of issues j and admit or l'efuse the party the benefit of the act, according to such finding. They were aware, they said, there were no express words authorizing them to send a case to a jury in the insolvent debtors’ act; but, reasoning from analogy and principle, they thought themselves warranted m doing so, as it was the best possible mode of sifting out the truth, and coming at the justice of the case. It was analogous to the power given to the judges, by the prison-bounds act, in similar cases, where fraud is alleged; and it is conformable to the practice in equity, in sending down causes to be tried at law, in order to satisfy the conscience of the chancellor, in difficult and doubtful cases.
They were further of opinion, however, that no case of this kind ought to be delayed or sent down to a jury, on bare suggestions or allegations of fraud. Affidavits ought; in all cases to be produced, to warrant the court in sending it to a jury, on a suggestion of fraud.
The plaintiff’s counsel then moved for another day, in order that they might prepare and bring forward the affidavits ; which was opposed by the opposite party ; but, the Court said, as the practice in these cases had not been settled by any express adjudication, they would give that indulgence in this case, which they said should not be drawn into a precedent in future, as the court would always expect, in every application of this kind, that the affidavits would be produced at the time of the motion.
On the following da)', sundry affidavits were produced and read, stating strong grounds of fraud on the part of the • defendant. Whereupon the court ordered him to be re *150 manded to gaol, and the suggestion to be filed instanter, te the end that the matters of fraud set forth in the affidavits, which were to form the substratum of the suggestion, might be tried in term time, with as little delay as possible.
N. B. The merits of this case were afterwards tried ha. a suit brought by Baugniett against the sheriff of Charleston district, who had seized the goods in question under another execution and sold them; in which suit the fraudulent conveyances, or bills of sale, from Zyistra to Baugniett were very fully and clearly established.
This case was afterwards submitted by Waties and Bay to the other judges, who fully concurred with them in the. principles laid down in it, and it has served as a precedent; in all cases of a similar nature, since.